UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDDY RUIZ DE LA OSA,

       Petitioner,

v.

                                            Case No. 3:26-cv-361-MMH-LLL

WARDEN, NORTH FLORIDA
DETENTION CENTER and
U.S. ATTORNEY GENERAL,

       Respondents.

---

## **ORDER**

### **I. Status**

Petitioner Eddy Ruiz De La Osa, an immigration detainee, initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 on February 19, 2026. The Federal Respondent (United States Attorney General) filed a Response to Petition for Writ of Habeas Corpus (Doc. 6; Response). Respondent Warden filed a Motion to Dismiss (Doc. 5), arguing he is not a proper respondent in this case. De La Osa filed a counseled Reply (Doc. 9; Reply). This case is ripe for review.

### **II. Background**

De La Osa, a citizen of Cuba, entered the United States on an unknown date. Doc. 6-1 at 1. Between May 1999 and July 2002, De La Osa was arrested

for and convicted of various offenses, including lewd and lascivious behavior and failure to register as a sex offender. Id. at 2–3. On October 6, 2000, an immigration judge ordered De La Osa removed from the United States. Doc. 6-2 at 1. Following entry of his order of removal, United States Immigration and Customs Enforcement (ICE) detained De La Osa for approximately 313 days until August 6, 2000, when he was released on an Order of Supervision (OSUP). Doc. 6-3 at 1. On October 25, 2025, ICE revoked De La Osa's OSUP and detained him. Docs. 6-1 at 2; 6-4 at 1.

### III. Analysis

In his Petition, De La Osa argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because he has been detained beyond the presumptively reasonable removal period and there is no significant likelihood of removal in the reasonably foreseeable future. Petition at 6–7. Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. See Johnson v. Guzman Chavez, 594 U.S. 523, 543–44 (2021) ("And § 1231 explains what to do if the alien is ordered removed."); see also Deshati v. Noem, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025)[1]

---

[1] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2).

Nevertheless, in Zadvydas, 533 U.S. at 690, the Supreme Court held that indefinite detention of aliens raises serious constitutional concerns. Once an order of removal is final, ICE should make every effort to remove the alien within a reasonable time. Id. at 701. The government may detain an alien beyond the statutory removal period if he is, among other things, a criminal alien or the Attorney General has determined the alien is a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6). The Supreme Court in Zadvydas held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. Id. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed and the alien "'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,'" the burden then shifts to the Government to

provide evidence sufficient to rebut that showing. Id. at 1052 (quoting Zadvydas, 533 U.S. at 701). Thus, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a significant likelihood of removal in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701.

Here, the Court first considers whether the presumptively reasonable six-month period has expired. Courts have used various methods to calculate the six-month period. Some courts have considered in the aggregate all periods of detention following an order of removal, regardless of whether the periods of detention were consecutive. See Jaranow v. Bondi, 819 F. Supp. 3d 1229, 1236 (W.D. Wash. 2026) (collecting cases from the Ninth Circuit that "have found that the six-month period of detention need not be consecutive to reach the limit established in Zadvydas"); Patel v. Bondi, No. CV 25-16218 (KMW), 2025 WL 3294353, at *2 (D.N.J. Nov. 26, 2025) (finding that the court must "consider the entire period of [the p]etitioner's detention"—not just the current length of detention). Other courts have not—instead they have determined

4

that each period of detention restarts the removal-period clock. See Barrios v. Ripa, No. 1:25-cv-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (rejecting a petitioner's argument "that his detention should be counted in the aggregate based upon his prior detentions," because doing so would raise constitutional concerns to "any subsequent period of detention, even one day," "[a]nd adjudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General—effectuating removals"); Liu v. Carter, No. 25-3036-JWL, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) ("[T]he removal-period clock restarts when an alien subject to a removal order is again detained by ICE."). Still other courts appear to have determined that the presumptively reasonable six-month period includes the 90-day statutory removal period and the 90-days immediately thereafter and expires once that time has run. See Beltran v. Ripa, No. 2:25-cv-01174-SPC-NPM, 2026 WL 21252, at *2 (M.D. Fla. Jan. 5, 2026).

The Federal Respondent contends that the authority to detain De La Osa remains within the presumptively reasonable six-month period because, considering only De La Osa's most recent detention, as of the date of the filing of the Petition, ICE had detained De La Osa for approximately 118 days. Response at 5. The Court is not persuaded that the presumptively reasonable period of detention restarts with each new detention in every circumstance.

5

Instead, the Court finds that once an individual has been detained for more than six consecutive months after his final order of removal is entered, he has met the first prong of the Zadvydas test. Here, ICE previously detained De La Osa for nearly one year—between October 6, 2000, and August 6, 2001. Docs. 6-2 at 1; 6-3 at 1. As such, De La Osa has already been detained beyond the presumptively reasonable six-month period.

Because the six-month period for presumptively reasonable detention has expired, Zadvydas's burden-shifting framework applies. De La Osa has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. Indeed, De La Osa has now been detained approximately eight months, but ICE has yet to remove him. He also contends that "[t]here is no repatriation agreement between Cuba and [the] United States" that would allow ICE to remove him. Petition at 6. Thus, the burden shifts to the Federal Respondent.

The Court finds that the Federal Respondent has not submitted evidence sufficient to rebut De La Osa's showing that there is no significant likelihood of removal in the reasonably foreseeable future. The Federal Respondent submits the declaration of Bradford A. Rubinoff, an ICE deportation officer. See generally Doc. 6-6. Rubinoff states that ICE intends to remove De La Osa to Mexico, and he asserts that De La Osa has "potential seat allocation for

Third Country Removal (Mexico) flight from Lake City, Florida Airport to Harlingen, Texas Airport, planned for May 25, 2026." Id. at 3.

The Federal Respondent's scant evidence does not persuade the Court. It appears ICE has been attempting to remove De La Osa to Mexico since November 2025, Doc. 6-5 at 1, but has not succeeded. And although De La Osa had "potential seat allocation" for a removal flight on May 25, 2026, that date has long passed with De La Osa remaining in ICE custody. Moreover, there is no evidence that ICE has attempted to obtain a Mexican travel document for De La Osa, that Mexico intends to accept De La Osa, or that ICE has communicated with Mexico regarding De La Osa at all. Considering the record, the Court finds the Federal Respondent has failed to show that there is a significant likelihood De La Osa will be removed in the reasonably foreseeable future. Therefore, De La Osa is entitled to release from detention under Zadvydas.

Because the Court will grant the Petition on the basis of De La Osa's Zadvydas claim, it need not, and does not, address De La Osa's remaining claims. See Banks v. Dretke, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative"); see, e.g., Pena-Gil v. Lyons, No. 25-CV-03268-PAB-NRN, 2025

7

WL 3268333, at *4 (D. Colo. Nov. 24, 2025) ("Because the Court will grant petitioner's petition on the basis of his Zadvydas claims, . . . it need not reach petitioner's remaining claims that contest petitioner's detention.").

Accordingly, it is **ORDERED**:

1.      De La Osa's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**. Respondents shall release De La Osa **within 24 hours** of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected. De La Osa shall be subject to his preexisting OSUP.

2.      Respondent Warden's Motion to Dismiss (Doc. 5) is **DENIED**. See, e.g., Fonseca v. Ripa, No. 3:26-CV-309-MMH-MCR, 2026 WL 1072778, *4–5 (M.D. Fla. Apr. 21, 2026).

3.      The **Clerk** is directed to terminate any motions, enter judgment granting the Petition, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of June, 2026, at 6:15 p.m.

MARCIA MORALES HOWARD
United States District Judge

Jax-9 6/23
c:      Counsel of record